IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TOQUYEN HARRELL | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-CV-800-JHP-FHM |
| | ) |
| DILLARD'S INCORPORATED | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court are Defendant Dillard's Inc.'s Motion for Summary Judgment with Brief in Support (Doc. No. 16) ("Motion for Summary Judgment"), Plaintiff Toquyen Harrell's Response to Motion for Summary Judgment (Doc. No. 17) ("Plaintiff's Response"), and Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. No. 18) ("Defendant's Reply"). Also before the Court is the parties' Joint Motion for Extension of Deadlines (Doc. No. 23) ("Joint Motion for Extension"). For the reasons below, Defendant Dillard's Inc.'s Motion for Summary Judgment is **GRANTED**. The Joint Motion for Extension is **DENIED AS MOOT**.

## BACKGROUND

### A. Undisputed Background[1]

Plaintiff Toquyen Harrell alleges she was injured while browsing a store owned by Defendant Dillard's Incorporated. (Petition at 1-2, ¶ 2-3, Doc. No. 2-1). Plaintiff alleges she fractured her left foot in an accident at the store and is suing Defendant for negligence on a theory of premises liability. (Motion for Summary Judgment at 1, Doc. No. 16; Depo. of

---

[1]The following facts are either not specifically controverted by Plaintiffs in accordance with Local Civil Rule 56.1(c) or are described in the light most favorable to Plaintiffs. Immaterial facts are omitted.

Toquyen Harrell at 52:11-14, Doc. No. 2-4). Plaintiff alleges that on or about August 22, 2009, she visited Defendant's store, turned a corner, and tripped on the leg of a mirror. (Depo. of Toquyen Harrell at 23:5-9, Doc. No. 17-1). Plaintiff admits she would have seen the mirror leg had she looked down but claims she was distracted by merchandise and advertising. (Depo. of Toquyen Harrell at 23:5-9, Doc. No. 17-1; 26:19-25, Doc. No. 16-5). Afterwards Plaintiff returned to work, where her supervisor, noting that Plaintiff was limping, asked what had happened and told Plaintiff to report the accident. (Depo. of Toquyen Harrell at 23:15-20, Doc. No. 17-1). Plaintiff allegedly reported the accident to one of Defendant's employees, who said she would "complete a form." (Depo. of Toquyen Harrell at 23:21-25, Doc. No. 17-1). No accident report form has been produced by either party.

The medical evidence provided to the Court consists of charts from three separate visits to three doctors. The earliest chart, dated August 24, 2009, is from Plaintiff's primary care physician Dr. Bruce Bennett. (Plaintiff's Response at 6-7, Doc. No. 17-1). Bennett's chart, however, mentions only bruising and pain in Plaintiff's right calf. (*Id.*). The calf pain reportedly began about a week prior to the appointment, after an accident occurring August 17—five days before the date Plaintiff alleges the Dillard's accident occurred. (*Id.*). The chart states that Plaintiff "reinjured" her right leg at Defendant's store on August 22, 2009, but includes no reference to any foot injury or symptoms. (*Id.*).

The only medical records describing any foot injury are from Dr. Wesley Stotler and Dr. John Tunnell, over eight months after accident. (Plaintiff's Response at 3-5, Doc. No. 17-1). Dr. Stotler's chart of May 6, 2010 states that a Dr. Tim Maclin previously diagnosed Plaintiff's fractured heel. (*Id.* at 3). Under Dr. Macklin's care, the records provided indicate that Plaintiff underwent physical therapy and wore a walking boot for about five months. (Plaintiff's

Response at 2, ¶ 4, Doc. No. 17). The chart also mentions that Plaintiff "states she tripped over a mirror at the store in November [sic] injuring her foot." (*Id.*). Dr. Stotler's report does not state any connection between the newly complained-of November accident and the fracture, nor does Stotler's report otherwise attempt to explain the injury. Dr. Tunnell's report of May 13, 2010 includes no explicit reference to a store accident but notes the "date of onset" of Plaintiff's injury to be August 1, 2009. (*Id.* at 4).

**B. Procedural History**

On August 16, 2011, Plaintiff brought this suit for negligence in the Tulsa County District Court. Defendant removed the case to this Court on December 23, 2011. Defendant filed its Motion for Summary Judgment on April 30, 2012. Absent an extension, discovery in this case ended July 19, 2012.

## DISCUSSION

**A. Motion for Summary Judgment**

Defendant seeks summary judgment on Plaintiff's negligence claim. When a party moves for summary judgment and sets forth uncontroverted material facts, the burden of proof shifts to the opposing party to present evidence justifying trial on the issue. *Stephens v. Yamaha Motor Co., Ltd., Japan*, 1981 OK 42, ¶ 11, 627 P.2d 439, 441. To grant summary judgment, the Court must determine that the party seeking summary judgment has established the absence of a genuine issue of material fact and entitlement to summary judgment. *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

A party is entitled to summary judgment when no reasonable jury could find in favor of the opponent. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1128 (10th Cir. 2009). In making this determination, the Court considers all material facts and reasonable inferences in the light most

favorable to the nonmoving party. *Id.* A fact is material if its proof would establish or refute an element of a claim. *Tortorelli v. Mercy Health Ctr., Inc.*, 2010 OK Civ. App. 105, ¶ 24, 242 P.3d 549, 559. Mere contention that facts exist or might exist is insufficient—the responding party is obligated to present some proof that will support his allegations at trial. *Id.* at 559.

Plaintiff brings her claim under a theory of premises liability. To recover on this theory, a plaintiff must establish that defendant breached its duty to the plaintiff, and that breach of duty proximately caused the plaintiff's damage or injury. *Loper v. Austin*, 1979 OK 84, ¶ 9, 596 P.2d 544, 546. Plaintiff's theory of duty is premised on the allegation that she was an invitee, or one invited to the premises for the purpose of a common interest and mutual advantage. *Brown v. Nicholson*, 1997 OK 32, ¶ 7, 935 P.2d 319, 321. While businesses owe invitees a duty to keep the premises in a reasonably safe condition and to warn invitees of hidden dangers, they are not responsible for eliminating open and obvious dangers (ones readily observable in the exercise of due care). *Nicholson v. Tacker*, 1973 OK 75, ¶ 9, 512 P.2d 156, 158; *Martin v. Aramark Servs., Inc.*, 2004 OK 38, ¶ 5, 92 P.3d 96, 97. In general, whether a condition was open and obvious depends on the facts and circumstances of each case. *Woodall v. Chandler Material Co.*, 1986 OK 4, ¶ 14, 716 P.2d 652, 654.

The parties do not dispute that Plaintiff, a guest in a store open to the public, was Defendant's invitee. The first point of contention is whether Defendant breached its duty to Plaintiff by failing to warn of a hidden danger, or whether the mirror leg was an open and obvious condition. Defendant has cited no authority to rebut Plaintiff's argument that breach is a question of fact. In this case, the placement of the mirror just around a corner, the presence of advertisements, and the potential distraction of merchandise are all conditions similar to those in cases where summary judgment was denied as to breach. *See Zagal v. Truckstops Corp. of Am.*,

1997 OK 75, ¶ 10, 948 P.2d 273, 275 (reversing summary judgment where plaintiff tripped over a box located just around a corner); *Hansen v. Academy, Ltd.*, 2006 OK Civ. App. 63, ¶ 9, 136 P.3d 725, 726 ("While [plaintiff] could have observed the protruding boat trailer tongue had she been looking, her attention was diverted away from the sidewalk by an inflatable shark which had been placed within the boat by Academy's employees").

However, establishing breach alone will not defeat summary judgment, as a claim cannot reach a jury where the plaintiff is incapable of satisfying one or more remaining elements. In this case, Plaintiff has failed to provide evidence of causation. Summary judgment for lack of causation is appropriate only if the trial court "determines that the facts are insufficient to show cause in fact because a reasonable person could not believe in the existence of the causal link between the injury and facts relating to a defendant's conduct." *Christian v. Gray*, 2003 OK 10, ¶ 50, 65 P.3d 591, 611. In evaluating causation for purposes of summary judgment, the Court views the totality of the evidence, rather than focusing on a single piece. *Jones v. Mercy Health Ctr., Inc.*, 2006 OK 83, ¶ 24, 155 P.3d 9, 15. When causation is too speculative to present to a jury, summary judgment is proper. *See id.*

Defendant has presented material evidence that Plaintiff has failed to dispute. In its Motion for Summary Judgment, Defendant points out that Plaintiff's claimed injury is a "fracture of the left foot" (Motion for Summary Judgment at 4, ¶ 12; *see also* Depo. of Toquyen Harrell at 52:11-14, Doc. No. 2-4), but that no medical record provided by Plaintiff connects any injury to Plaintiff's left foot with the accident in Defendant's store. (Motion for Summary Judgment at 5, ¶ 13). As Defendant's Motion sets out that there is no dispute as to the material facts contained in Plaintiff's medical records, the burden rests on Plaintiff to present evidence that would create a triable issue of fact. *See Stephens*, 1981 OK 42, ¶ 11, 627 P.2d at 441. Plaintiff's Response

fails to meet that burden.

Although Plaintiff offers multiple medical records in her Response, none of these records provides any link between Plaintiff's left foot fracture and the alleged August 22nd accident. Plaintiff's evidence consists of the August 24th chart from Dr. Bruce Bennett and the two records from Doctors Wesley Stotler and John Tunnel that were created over eight months after the alleged accident. The August 24th chart from Dr. Bennett notes a completely distinct injury, referring to Plaintiff's *right* calf as opposed to the left foot Plaintiff claims was fractured in the accident giving rise to this suit. This record fails to even mention the *left* foot or leg. As the injuries complained of in the August 24th report were on opposite sides of the body, this record wholly fails to establish any causal connection between the accident and Plaintiff's complained-of left foot fracture.

Furthermore, none of the other medical records provided by Plaintiff opine that the accident caused or might have caused Plaintiff's fracture, and all provide a substantially different date of injury. Dr. Stotler's May 6, 2010 chart does mention a left heel fracture, but it states that Plaintiff claimed her accident occurred in November. Read literally, this report actually tends to refute Plaintiff's allegation that she fractured her left foot in the August 21st accident. Also, contrary to Plaintiff's assertion Dr. Stotler's report does not indicate whether the alleged accident might have caused Plaintiff's fracture. It merely reflects that Plaintiff told Dr. Stotler about an accident. (Plaintiff's Response, Ex. 1, at 3, Doc. No. 17-1) ("[Plaintiff] states she tripped over a mirror at the store in November injuring her foot and she had pain within her legs at that time"). The record from Dr. Tunnell does not refer to any accident, but simply notes the "date of onset" was August 1, 2009, approximately three weeks before Plaintiff alleges the accident occurred. These three records are all the medical evidence provided by Plaintiff in her attempt to create a

triable issue of fact as to causation.

Ultimately, a jury faced with this medical evidence would be forced to speculate as to both the date and the cause of Plaintiff's injury. The only medical record that mentions an accident on August 22, 2009 does not relate to Plaintiff's foot. The only medical records dealing with treatment of Plaintiff's foot are inconsistent, providing dates of onset of injury 20 days to two months before or after August 22, 2009, the alleged date of injury. It is not reasonable to infer that these medical records provide proof of causation when two records provide the wrong date, one fails to mention the accident, and another provides the correct date but refers to a different injury. Furthermore, the two specialist records, made over eight months after the accident, introduce evidence of further medical treatment that may actually support a reasonable inference of intervening causation. (Plaintiff's Response, Ex. 1, at 3, Doc. No. 17-1) ("Dr. Macklin [sic] did previously diagnose [Plaintiff] with a stress fracture of the foot."); (Plaintiff's Response, Ex. 1, at 4, Doc. No. 17-1) ("[Plaintiff] reports being in a walking boot for about 5 months."). Standing alone, Plaintiff's medical evidence is insufficient to create a triable issue of fact necessary to defeat summary judgment.

In addition to the proffered medical evidence, Plaintiff points to her supervisor's concern for the way she walked immediately after the accident as evidence of causation. (Plaintiff's Response at 2, ¶ 2, Doc. No. 17-1). This evidence, taken as true, supports a reasonable inference that Plaintiff suffered an injury after the alleged accident. However, the evidence does not support a reasonable inference that Plaintiff fractured her left foot, the injury complained of in the instant case, at that time. The record indicates that Dr. Bennett, the only physician to see Plaintiff in close proximity to the alleged accident, made no notes concerning Plaintiff's left foot. This omission occurs despite the fact Dr. Bennett examined Plaintiff's right leg and was aware of

the accident. The fact that Plaintiff was not complaining of a severe foot injury in the days following her accident tends to refute any inference that may be drawn in Plaintiff's favor from her supervisor's comments.

Plaintiff also claims that the "the general tenor and intent" of Plaintiff's records supports an inference of causation. (Plaintiff's Response at 7, Doc. No. 17). In support of this contention, Plaintiff cites *Nomac Drilling, LLC v. Mowdy*, 2012 OK 45, _ P.3d _. *Nomac* is inapplicable, however, because it involved the standard for admitting expert testimony in a workers' compensation action, as well as whether a decision of the Workers' Compensation Court was supported by any competent evidence. *Nomac*, 2012 OK 45, ¶ 1. In this case, Plaintiff's medical reports are not challenged expert testimony. Further, none of the reports make even general statements as to the cause of Plaintiff's injuries.

Similar issues of applicability arise with respect to Plaintiff's citation to *Reece v. Pletcher*, 1992 OK CIV APP 86, 834 P.2d 454. While the *Reece* court did state that medical evidence is not always necessary in personal injury actions, the issue was whether a jury award was supported by any competent evidence, not whether summary judgment on causation was proper. *Id.* at 455. The plaintiff, an injured victim of a traffic collision, presented his medical bills from the accident and testified that these reflected his expenses. *Id.* Unlike the plaintiff in *Reece*, Plaintiff Harrell has failed to offer any evidence, medical or otherwise, supporting a reasonable inference that the August 22nd accident in Defendant's store caused the complained-of left foot injury.

Although summary judgment requires the Court to accept Plaintiff's proffered facts as true, doing so in this case leads only to contradiction. Accepting Plaintiff's deposition as true and finding that the accident occurred August 22, 2009, the Court cannot simultaneously credit

the date of onset in Dr. Stotler's report, which contends Plaintiff stated the accident occurred in November. Taking Dr. Bennett's medical record as true, the Court must find that Plaintiff's left foot was asymptomatic on August 24, 2009, despite Plaintiff's contention that it was the August 22nd accident that caused her left foot injury. These inconsistencies ultimately undermine Plaintiff's case for causation.

Because Defendant has presented evidence showing no controversy as to material facts, Plaintiff bears the burden of demonstrating a triable issue on causation. Plaintiff has failed to carry this burden by failing to provide records or other evidence that establish any causal link between the August 22nd Dillard's accident and a left foot injury. Even if Plaintiff could convince a jury of duty and breach, no reasonable jury could find in Plaintiff's favor on causation. As the claim fails on this element, the Court need not reach the issue of damages. Defendant has satisfied its burden, Plaintiff fails to satisfy hers. Defendant is entitled to summary judgment.

**B. Joint Motion for Extension**

The parties also seek a ninety-day extension of deadlines in order to conduct further discovery, including obtaining an independent medical examination of the Plaintiff on behalf of the Defendant and deposing the Plaintiff's health care providers and employer. Based on the Court's ruling on the summary judgment pleadings, there is no good cause for such an extension. Fed. R. Civ. P. 6.

In responding to a motion for summary judgment, litigants exercise full and free choice as to what evidence to put before the judge. *Conway Corp. v. Ahlemeyer*, 754 F. Supp. 604, 605 (N.D. Ill. 1991). Thus the court is entitled to treat the litigants' summary judgment presentations as constituting the full story. *Id.* at 606; *see also Walker v. Progressive Direct Ins. Co.*, 2011 WL

3321260, at *1 (N.D. Okla. Aug. 2, 2011) ("Plaintiffs were afforded an opportunity to demonstrate a genuine issue for trial in responding to Defendant's Motion for Summary Judgment.") Plaintiffs combating summary judgment must identify specific evidence in the record and articulate the precise manner in which that evidence supports a claim. *Abdul v. Logistics Express, Inc.*, 2009 WL 6965089, at *2 (S.D. Miss. Aug. 18, 2009).

When a party moves for summary judgment early, F.R.C.P. 56(d) safeguards against premature resolution. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5 (1986); *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 732 (10th Cir. 2006). A nonmovant invoking the rule must show by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition. Fed. R. Civ. P. 56(d). The court may then defer considering or deny the motion, allow time for the parties to obtain affidavits or declarations or take discovery, or any other appropriate order. Fed. R. Civ. P. 56(d). The rule provides an alternative to a response, and requires demonstrating how additional time will enable the party to rebut an opponent's allegations. *Pasternak v. Lear Petroleum Exploration, Inc.,* 790 F.2d 828, 833 (10th Cir. 1986) (citing Rule 56(f), now 56(d) after the 2010 amendments); *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986) (finding that parties claiming they were 'railroaded' by a premature motion for summary judgment have recourse to Rule 56(f)).

Although discovery has not ended and the parties have requested an extension, Plaintiff has not indicated that more discovery is necessary to respond to Defendant's motion. If more time was necessary to unearth additional facts, Plaintiff could have provided affidavits explaining the circumstances. Furthermore, the parties delayed requesting an extension for more than seven weeks after Defendant filed its reply to the summary judgment motion. As Plaintiff did not invoke F.R.C.P. 56(d), the Court can find no good cause to delay its ruling on

Defendants' pending summary judgment motion until discovery has ended. As the Court has granted summary judgment to defendant, the Motion for Extension is **MOOT**.

## CONCLUSION

For the reasons set forth, Defendant Dillard's Inc.'s Motion for Summary Judgment (Doc. No. 16) is **GRANTED**. The Joint Motion for Extension (Doc. No. 23) is **DENIED AS MOOT**.

IT IS SO ORDERED this 26th day of July, 2012.

James H. Payne
United States District Judge
Northern District of Oklahoma